```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
```

MARGARET D. ROBERTS,            )  Case No. C08-83-RAJ-JPD
                                )
            Plaintiff,          )
                                )
        v.                      )
                                )
                                )  REPORT AND RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner,)
Social Security Administration, )
                                )
            Defendant.          )
_____ )

Plaintiff Margaret Roberts appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-year old woman with a high-school education, but who was enrolled in special education classes as a child. Administrative Record ("AR") at 384, 387, 407. Her past work experience includes employment as a Wal-Mart greeter and products demonstrator. AR at 384. Plaintiff was last gainfully employed as a greeter in January 2004. Id.

Plaintiff initially applied for DIB and SSI on June 2, 2004. Plaintiff asserts that she is

REPORT AND RECOMMENDATION
PAGE – 1

disabled due to a combination of physical and mental impairments, including type II diabetes, obesity, post-traumatic stress disorder ("PTSD"), depression and anxiety. AR at 18. She asserts an onset date of January 9, 2004. AR at 384.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 48, 54. Plaintiff requested a hearing, which took place on December 20, 2006. AR at 380-420. On February 27, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-28.

After reviewing additional evidence, the Appeals Council denied plaintiff's request for review. AR at 5-9. Consequently, the ALJ's ruling is the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its

judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Roberts bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four.

At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

## V. DECISION BELOW

On February 27, 2007, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant has not engaged in substantial gainful activity since January 9, 2004, the alleged onset date (20 CFR §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*).

3. The claimant has the following "severe" impairments: learning disorder NOS, dysthymia, post traumatic stress disorder, diabetes, bilateral hip bursitis, and obesity (286 pounds at 67 inches as of September 27, 2006) (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand at least 2 hours in an 8-hour workday, walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. She was limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolding. She can adequately perform the mental activities generally required by competitive, remunerative, unskilled work. Specifically, she can understand, remember, and carry out simple instructions, make judgments commensurate with the functions of unskilled work (i.e., simple work-related decisions), respond appropriately to supervisors, co-workers, and usual work situations, and appropriately handle changes in a routine work setting not dealing with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on September 22, 1958 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

| | | |
|---|---|---|
| 01 | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1560(c), 404. 1566, 416.960(c), and 416.966). |
| 02 | | |
| 03 | | |
| 04 | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from January 9, 2004 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)). |

AR at 17-27.

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in his evaluation of the medical opinions?

2. Did the ALJ err in making an adverse credibility determination?

Dkt. No. 17 at 6, 15.

## VII.  DISCUSSION

A. <u>Standards for Review of Medical Evidence</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.

1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p 1996 WL 374180, at *2 (S.S.A.).  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Orn* at 495 F.3d 632-33.

B. The ALJ Erred in His Evaluation of the Medical Evidence

The appeal in this case focuses upon the plaintiff's mental impairments.  The ALJ received medical evaluations from the plaintiff's treating psychologist Sylvia Thorpe, Ph.D., evaluating psychiatrist Anselm Parlatore, M.D., non-examining reviewing State psychologists Kerry Bartlett, Ph.D., and Anita Peterson, Ph.D.  The ALJ rejected findings of Dr. Thorpe in favor of those espoused by Dr. Peterson.  Although it is legally possible to reach this conclusion under the hierarchy of medical evidence set forth above, the reasons set forth by the ALJ fail to meet the legal and evidentiary thresholds required to do so.

1. Dr. Thorpe

Dr. Thorpe offered opinions that Plaintiff's major depressive disorder, chronic pain disorder, and learning disorders result in "severe" and "marked" limitations of functioning in several basic work-related activities, such as marked or severe limitations in her ability to understand and remember more than two-step instructions, to learn new tasks, to interact in public, to exercise judgment and make decisions, and to respond appropriately to and tolerate the pressures and expectations of a normal work setting (AR at 244-45, 248-49, AR at 316-17). Dr. Thorpe also completed psychological report forms reflecting the criteria of the mental listings, and found that Plaintiff's mental impairments were of sufficient severity to meet or equal listing 12.06 for anxiety related disorders and/or PTSD (AR at 321-23, 325-26), and listing 12.04 for depressive disorders (AR at 327-28). Dr. Thorpe rated the plaintiff's Global Assessment of Functioning ("GAF")[2] at various time between 41 and 58.

The ALJ gave "little weight" to the opinions of Dr. Thorpe. First, the ALJ concluded that Dr. Thorpe's opinions were simply "check the box" opinions, unsupported by the records. AR at 26. Second, he asserted that the opinions were likely accommodation opinions to assist the plaintiff in receiving a disability rating, rather than being based on the plaintiff's residual functional capacity. AR at 25. Finally, he rejected Dr. Thorpe's GAF assessment as being completely tied to episodic marital and family problems. AR at 25. These reasons do not have merit.

Dr. Thorpe treated the plaintiff for more than 15 years. AR at 329. A substantial number of medical reports from Dr. Thorpe are included in the record. Plaintiff stopped

---

[2] The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (Text. Rev., 4th ed. 2000). A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id*. At 34. A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as lack of friends and/or the inability to keep a job. *Id*.

seeing Dr. Thorpe in 2004 for therapy due to financial constraints.  AR at 403.  The Department of Social and Health Services ("DSHS") forms cannot be rejected as simply check-the-box forms.  They also contain the notes of Dr. Thorpe as well.  *See e.g.,* AR at 243-50.  Additionally, the ALJ's rejection of concurrent GAF scores as some type of an anomaly based exclusively on difficulties in the plaintiff's personal life does not bear scrutiny.  Plaintiff's GAF went from 58 to 41 in a two-month period in 1999, well before she separated from her husband or placed her children in foster care (AR at 206-07).  Plaintiff actually separated from her husband sometime between May and September 2000.  At that time, her GAF scores were 54 and 58.  AR at 201-03. Plaintiff's GAF dropped to 45 in December 2000 (AR 197-98), but she did not place her children in foster care until early 2004, at which time her GAF remained at 41.  AR at 196. Thus, the ALJ's theory of the lower GAF score relating only to Plaintiff's "personal problems" is not borne out by the record.  Finally, the ALJ's comments that Dr. Thorpe's DSHS evaluations were "likely accommodation opinions rather than opinions based on residual functional capacity and the ability to work" (AR at 25) is pure speculation and is not supported by evidence.  The ALJ himself noted that it is "difficult to confirm the presence of such motives" in this case, but that it is likely in situations where the opinions departs substantially from the rest of the evidence."  AR at 25.  These opinions, however, did not depart substantially from Dr. Thorpe's opinions throughout the course of her treatment.

      2.  Dr. Parlatore.

  Dr. Parlatore opined that the plaintiff had difficulties following three-step commands and conversation.  AR at 178.  He also noted that she could remember only two out of four objects on testing, that she was unable to abstract proverbs, spell the word "WORLD" forward and backward or do serial sevens.  AR at 178.  He concluded that she had "a problem with concentration, pace, attention, and recall."  AR at 178.  Similar to Dr. Thorpe, he assessed her GAF at 45.  Id.

The ALJ gave "little weight" to the opinions of Dr. Parlatore. AR at 25. He did so because he believed most of the information came from the plaintiff herself, whom he found to be non-credible, and, according to the Commissioner, that Dr. Parlatore seemed to accept uncritically as true most, if not all, what she reported. Dkt. No. 18 at 9. However, this conclusion is not supported by the record. While it is undoubtedly true that a psychiatrist will rely in part on the statements made by the patient, Dr. Parlatore also administered tests described above that support his conclusion at least with respect to concentration, attention and recall. Substantial evidence does not support the simple dismissal of Dr. Parlatore's reports on the stated basis of over-reliance on the word of the plaintiff.

### 3. Conclusion Regarding Medical Evidence

The ALJ rejected the opinion of a long-term treating physician without providing specific and legitimate reasons for doing so. He did the same with the opinion of an examining physician, in favor of the opinion of a reviewing doctor. The ALJ erred in doing so. The ALJ is directed to reevaluate the medical evidence in light of the proper standards. If this means that the ALJ needs assistance to complete the medical review and to clear up any ambiguities in the record by calling a medical expert, the ALJ should do so.

### C. <u>On Remand the ALJ Will Also Revisit the Adverse Credibility Determination</u>

Credibility determinations are particularly within the province of the ALJ. *Andrews*, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p, 1996 WL 374186, *2-3. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186, *2-3. Once a claimant produces medical evidence of

an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." *Greger*, 464 F.3d at 972 (internal quotation omitted). General findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between her testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen*, 80 F.3d at 1284.

Here, there are no allegations that plaintiff was malingering; therefore the ALJ was required to provide clear and convincing reasons for discounting her testimony. *Reddick*, 157 F.3d at 722. Some of the reasons offered by the ALJ would warrant an adverse credibility determination. Some of the reasons offered by the ALJ misstate the record. For example, while the plaintiff stated she could pick up her pug, she did not say she could carry the dog. Similarly, citations are not set forth in the opinion supporting the ALJ's assertion of the plaintiff's admission that she could perform activities for a two hour stretch. Finally, and most importantly, to the extent that the ALJ is suggesting that the plaintiff's daily activities support her ability to perform in the workplace, the ALJ should address how performance of her daily activities translates to the world of work. *Vertigan v. Halter*, 260 F. 3d 1044, 1049

(9th Cir. 2001). Because this matter is being remanded for a reevaluation of medical opinions, on remand, the ALJ should also review the adverse credibility determination.

### D. The ALJ Did Not Err in His Assessment of the Lay Witness Testimony

Plaintiff also argues that the ALJ erred in his treatment of lay witness statements. The Court does not agree. The ALJ found the statements to be credible, but found them to be generally inconsistent with objective medical evidence, to the extent that they suggested disability. AR at 23. The ALJ did not err.

### E. On Remand, the ALJ Should Address the Issue of Asserted Limitation of Limited Exposure to the Public and Pacing

Although Dr. Kerry Bartlett opined that plaintiff should be limited in her exposure to the general public, the RFC included no such limitations with co-workers (or supervisors) (AR at 227-28, AR at 21). In addition, the ALJ's hypotheticals to the vocational expert at the hearing did not contain any limitations on pacing or productivity in the workplace as suggested by Dr. Parlatore. (AR at 21, 418-19). When a pacing limitation was included in a hypothetical by plaintiff's counsel, the Vocational Expert ("VE") testified plaintiff could not work as an assembler (AR at 419). On remand, if the ALJ determines that these are limitations supported by the evidence, a new hypothetical including all of plaintiff's limitations should be submitted to the VE.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of December, 2008.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge